**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **BRIDGET GILMORE** | **CIVIL ACTION:** _____ |
| **VERSUS** | **JUDGE** _____ |
| **WAL-MART LOUISIANA, LLC** | **MAGISTRATE JUDGE** _____ |

**COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Bridget Gilmore, for her complaint against Defendant, Wal-Mart Louisiana, LLC. (hereinafter, "Wal-Mart"), alleges as follows:

**PARTIES**

1.

Bridget Gilmore (hereinafter, "Gilmore") is the full age of majority and a resident of the County of Jackson, State of Arkansas. She is a citizen of the State of Arkansas under the meaning of 28 U.S.C. §1332.

2.

WAL-MART LOUISIANA, LLC ("Wal-Mart"), a limited liability company who is authorized to do business in the State of Louisiana and doing business in the State of Louisiana, organized and existing under the laws of the State of Delaware, with its principal place of business in Arkansas, and who is a citizen of the States of Delaware and Arkansas, within the meaning and intent of 28 U.S.C. §1332. Wal-Mart may be served pursuant to Rule 4 of the Federal Rules of Civil Procedure through their registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

**JURISDICTION & VENUE**

3.

This civil action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.  This Court has jurisdiction under the provisions of 28 U.S.C. §1343(4), 42 U.S.C. §2000e-5f, 42 U.S.C. §12117, 29 U.S.C. §633, and 29 U.S.C. §2617.

4.

The venue of this action is properly placed in the Western District of Louisiana pursuant to 28 U.S.C. §1391 because the facts giving rise to plaintiff's claim occurred in this district.

**FACTUAL BACKGROUND**

5.

Gilmore is a twenty-three (23) year old African-American female.

6.

On or about May 25, 2019, Gilmore was hired by Wal-Mart for employment at the store located at 1125 Shreveport Barksdale Highway, Shreveport, Louisiana 71105.

7.

Gilmore was originally hired in the capacity as a cashier with her original pay upon hiring of $11.00 per hour.

8.

On or about July 29, 2019, Gilmore was given the job of self-checkout host, in addition to her job as cashier.  Her rate of pay remained the same.

9.

On or about November 18, 2019, Gilmore was involved in a single car accident involving a deer.  As a result of the accident, Gilmore requested a leave of absence.

10.

Gilmore's request for a leave of absence was not initially responded to in a timely manner by Sedgwick, Wal-Mart's third-party administrator for claims.

11.

In order to avoid involuntary termination, Gilmore wrote a resignation letter to Wal-Mart.

12.

Subsequently, Sedgwick approved the leave of absence and extended the leave of absence through December 10, 2019.

13.

However, the Wal-Mart system processed Gilmore's resignation and the store closed out all of Gilmore's accounts and access to the store.

14.

Sedgwick informed Gilmore to report to the Shreveport store on December 11, 2019.

15.

Upon return, Yonne Walker (hereinafter, "Walker") who was the Personnel Department Manager claimed that Gilmore had voluntarily quit and she refused to reinstate Gilmore.

16.

Walker and Gilmore went to a back office to call Sedgwick personnel via speakerphone. During Walker's call with Sedgwick regarding Gilmore's status, Walker was rebuked by Sedgwick for failing to do her job properly by failing to check their e-mail which had the approval response.  Further, the Sedgwick representative also rebuked the store manager Sharon Pitts (hereinafter, "Pitts") for failing to check her e-mail as well and the Sedgwick representative mandated that Gilmore be reinstated.

17.

Further, the Sedgwick representative required Walker to override all of the missed days and also mandated that Gilmore did not have to have the permission of Pitts to be reinstated.

18.

Walker requested that Gilmore remain in the back office while she went to locate Pitts. After half an hour of waiting, Gilmore located Pitts and Walker in the jewelry department of the store, conversing with approximately six (6) other Wal-Mart employees. During this conversation, Pitts remarked, "I am not taking the time to rehire that little black bitch back into the system, because she didn't come to me, and explain why she was absent for so long. So, f--- her and that Sedgwick representative, they can't make me do it." Pitts instructed Walker, "If you want to rehire that little bitch, you can do it because I am not going to do a m---f--- thing for her black ass."

19.

Since Walker observed Gilmore overhear the end of the conversation, Walker insisted that Gilmore return to the back office. After approximately five minutes, Walker returned and completed the necessary paperwork for reinstatement at a lower pay rate.

20.

On subsequent shifts at Wal-Mart, Pitts subjected Gilmore to further taunts, including taunting her about her appearance and demeanor as a "little girl." Pitts continuously treated Gilmore in a derogatory manner unlike any other Wal-Mart employee.

21.

In further retaliation against Gilmore, Pitts chose to slash Gilmore's hours in an effort to have Gilmore resign and/or quit.

22.

Pitts continued to harass Gilmore, kept referring to Gilmore as "little girl," and demean

Gilmore at every opportunity prior to February 1, 2020.

23.

Further, Wal-Mart Asset Protection Agents at the store had harassed and demeaned Gilmore to the point that she reported the issue to corporate headquarters in February 2020. As an example, Wal-Mart Asset Protection Agent, Trashea King (hereinafter, "King") scolded Gilmore by saying, "That's ok, most of you b---- won't be here long, I don't know why they rehired your f---- a--- back Bridget. You will be gone, right with the rest of them soon enough."

24.

Further, Pitts and Walker refused to pay Gilmore for the time missed during the leave of absence. In response to one inquiry made by Gilmore regarding the back pay, Pitts informed her, "I'm not going to give you s---. And Sedgwick can't do a m------- f-------- think about it, you will not get paid for that time, and I'm not going to pay you from your bonuses.. If it were up to me, your little black ass wouldn't be rehired, I don't care if it were for compelling reasons, don't come back in here and ask me about it ever."

25.

Gilmore was never compensated for the back pay owed to her from the leave of absence as Walker refused to process this payment, claiming that Pitts would not authorize the payment and Sedgwick could not force Pitts and Walker to pay the monies.

26.

Wal-Mart's Customer Service Managers began to require that Gilmore conduct all of the register, self-checkout, and customer service voids, suspensions, and aborts. Upon information and belief, Wal-Mart used this as a pretext to have paper for their March 9, 2020, "interrogation" of Gilmore.

27.

On or about February 19, 2020, Gilmore made a written complaint to Wal-Mart headquarters regarding the conduct of Pitts, Walker, King, and customer service representatives.

28.

On March 9, 2020, Walker requested from Customer Service Manager, Kim Roberts, that Gilmore be taken out of her shift and taken to a backroom.

29.

Walker led Gilmore to a meeting room where Assistant Protection Manager Shay and another Asset Protection Manager, a white male, from another Wal-Mart store.

30.

The white Asset Protection Manager inquired into what Gilmore believed her career path at Wal-Mart was going to be.

31.

The white Asset Protection Manager claimed that Gilmore stole from the store on or about October 1, 2019.

32.

The white assistant asset protection manager claimed that a stack of paper on the desk in the back room demonstrated the alleged theft and claimed that Gilmore had stolen from the store.

33.

The white male Asset Protection Manager informed Gilmore that she was to write down exactly what he said in a statement to Wal-Mart or that Gilmore would be prosecuted and sent to jail straight from the store.

34.

The Wal-Mart employees refused to provide Gilmore with any of the alleged evidence

regarding the alleged theft.

35.

The Wal-Mart employees compelled Gilmore to respond to their questions during the detention.

36.

The Wal-Mart employees failed to inform Gilmore of any rights that she may have had, including but not limited to the right to remain silent, have an attorney present, or have another employee of her choosing present.

37.

Gilmore felt threatened for her emotional, mental, and physical safety during the entirety of the confrontation in the backroom.

38.

During the meeting, Gilmore was detained and prevented from leaving the room.

39.

Ultimately, the Wal-Mart employees called the Shreveport Police Department to come to the store to potentially arrest Gilmore.

40.

Wal-Mart never presented any of the alleged evidence regarding Gilmore's alleged role in any theft.

41.

Gilmore was not arrested by the Shreveport Police Department.

42.

On or about the night of March 9, 2020, Gilmore made a complaint with the Wal-Mart Service Portal regarding the treatment that she had received from Wal-Mart employees.

7

43.

This Ethics complaint was Walmart Ethics Case #WMT200300621.

44.

On or about April 15, 2020, Gilmore received notification from the Wal-Mart Service Portal that the case was not closed and "out of respect for the individual, and to protect privacy and confidentiality, we [Wal-Mart] cannot release specific details about the outcome."

45.

Upon information and belief, no adverse action was taken in reference to Wal-Mart Ethics Case #WMT200300621.

46.

Upon information and belief, no adverse action was ever taken in reference to any complaint regarding the Wal-Mart Store where Gilmore worked.

47.

Further, Gilmore believes that her termination of employment was also retaliation for her making complaints regarding the conduct of Wal-Mart employees.

48.

The only information that Gilmore ever received regarding the alleged theft is that Wal-Mart claimed the following was stolen:

| | |
|---|---|
| Groceries: | $76.55 |
| Deli Food | $76.55 |
| Hair Products | $76.55 |
| Cosmetics | $76.55 |

There was no description or itemization of the things that were allegedly stolen.

49.

Further, Gilmore had no access to the deli food, hair products, or cosmetics department in her capacity as a store host.  In her capacity as cashier, the only access to deli food, hair products, or

cosmetics were if customers brought items through for check-out.

50.

After March 9, 2020, Gilmore was never permitted to return to work at Wal-Mart and was terminated by Wal-Mart.

51.

In the separation notice from Wal-Mart completed by Roberts, Wal-Mart alleges that Gilmore was terminated for failing to follow the integrity policy.

52.

In a further separation notice from Wal-Mart completed by Roberts, Wal-Mart alleges that Gilmore failed to follow Point Policy Attendance, leading to the termination of the job.

53.

Gilmore was never compensated for her leave of absence time, vacation time, or her final pay period.

54.

On June 4, 2020, Gilmore filed a complaint of racial, color, and sex discrimination and a retaliation claim with the Equal Employment Opportunity Commission (EEOC).  This Charge of Discrimination is attached as Exhibit "A" to this Complaint.

55.

On or about September 8, 2020, the EEOC issued a right to sue letter to Gilmore.  Upon information and belief, Gilmore received the letter on or about September 14, 2020.  The EEOC Right to Sue Letter is attached herein as Exhibit "B" to this Complaint.

56.

Gilmore has exhausted all administrative remedies and now maintains a right to bring a civil action under federal law.

## CAUSES OF ACTION

### COUNT I
**(Violation of Title VII—Race Discrimination)**

57.

Gilmore reincorporates and realleges Paragraphs 1-56.

58.

Gilmo re shows that the above described actions of Defendant deprived her of the benefits, income, privileges, terms and conditions of his employment with defendant because of her race in violation of the provisions under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, et seq.

59.

Gilmore shows that the actions of Wal-Mart were simply a pretext for her determination and that Wal-Mart did not have a legitimate, non-discriminatory reason for terminating her employment.

60.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

61.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

## CAUSES OF ACTION
## COUNT II
**(Violation of Title VII—Gender Discrimination)**

62.

Gilmore reiterates and incorporates Paragraphs 1-61.

63.

Gilmore shows that the above described actions of Defendant deprived her of the benefits, income, privileges, terms and conditions of his employment with defendant because of her sex in violation of the provisions under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, et seq.

64.

Gilmore shows that the actions of Wal-Mart were simply a pretext for their determination and that Wal-Mart did not have a legitimate, non-discriminatory reason for terminating her employment.

65.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**CAUSES OF ACTION**
**COUNT II**
**(Violation of Title VII—Color Discrimination)**

66.

Gilmore reiterates and incorporates Paragraphs 1-61.

67.

Gilmore shows that the above described actions of Defendant deprived her of the benefits, income, privileges, terms and conditions of his employment with defendant because of her sex in violation of the provisions under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, et seq.

68.

Gilmore shows that the actions of Wal-Mart were simply a pretext for their determination and that Wal-Mart did not have a legitimate, non-discriminatory reason for terminating her employment.

69.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

a)  Past, present, and future loss of earnings and fringe benefits;

b)  Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c)  All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

**CAUSES OF ACTION**
**COUNT IV**
**(State Law False Imprisonment Claim)**

70.

Gilmore reiterates and incorporates Paragraphs 1-69.

71.

Gilmore asserts that the actions of the Wal-Mart employees constituted a false imprisonment

12

of Gilmore on the afternoon/evening of March 9, 2020.

72.

The actions of the Wal-Mart employees were in the course and scope of their employment and benefitted the employer, Wal-Mart.

73.

As a result of the false imprisonment by Defendant, Gilmore suffered past, present, and future emotional distress and mental anguish, humiliation, and embarrassment.

## CAUSES OF ACTION
## COUNT V
### (State Law Claim of Assault)

74.

Gilmore reiterates and incorporates Paragraphs 1-73.

75.

Gilmore asserts that the actions of the Wal-Mart employees constituted an assault of Gilmore on the afternoon/evening of March 9, 2020.

76.

The actions of the Wal-Mart employees were in the course and scope of their employment and benefitted the employer, Wal-Mart.

77.

As a result of the assault by Defendant, Gilmore suffered past, present, and future emotional distress and mental anguish, humiliation, and embarrassment.

## CAUSES OF ACTION
## COUNT VI
### (Violation of Louisiana Anti-Discrimination Laws)

78.

Gilmore reiterates and incorporates Paragraphs 1-77 of this Complaint.

13

79.

The allegations set forth herein violate Louisiana Revised Statute 23:323 and Louisiana Revised Statute 23:332 as Wal-Mart's actions constitute discriminatory actions.

80.

Louisiana Revised Statute 23:303 permits civil suits on the basis of discrimination to be filed as civil actions.

81.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

a) Past, present, and future loss of earnings and fringe benefits;

b) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings, from the date of the filing of the EEOC Complaint.

## CAUSES OF ACTION
## COUNT VII
### (State Law Claim of Defamation)

82.

Gilmore reiterates and incorporates Paragraphs 1-81 of this Complaint.

83.

Wal-Mart's statements were false statements made with malice and published against Gilmore.

84.

This is a claim of both defamation and defamation per se.

85.

As a result of the assault by Defendant, Gilmore suffered past, present, and future emotional distress and mental anguish, humiliation, and embarrassment.

## CAUSES OF ACTION
## COUNT VIII
### (Federal Law Claim of Retaliation)

86.

Gilmore realleges and reavers Paragraphs 1-85 of this Complaint.

87.

Wal-Mart's conduct constitutes violations of multiple provisions of the 49 U.S.C. §13101 et seq.

88.

The conduct of Wal-Mart constitutes retaliatory conduct against Gilmore for his reporting of the illegal conduct of other Wal-Mart employees.

89.

Gilmore was specifically terminated by Wal-Mart as retaliation for Gilmore's actions. Wal-Mart's alleged reason for terminating Gilmore was a pre-text for retaliatory conduct.

90.

As a result of Defendant's actions, Plaintiff has suffered damages in the following areas:

d) Past, present, and future loss of earnings and fringe benefits;

e) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

f) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings.

## CAUSES OF ACTION
## COUNT IX
### (Federal Claim of Whistleblower Violation)

91.

Gilmore realleges and reavers Paragraphs 1-90 of this Complaint.

15

92.

Wal-Mart's conduct is a violation of federal law and was reported to a corporate superior. Therefore, Gilmore satisfies all conditions required to meet the definition of "whistleblower" under federal law.

93.

Wal-Mart specifically took adverse employment action against Gilmore based on her whistleblower activities.

94.

As a result of Defendants' actions, Plaintiff has suffered damages in the following areas:

1) Past, present, and future loss of earnings and fringe benefits;

2) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

3) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings.

## CAUSES OF ACTION
## COUNT X
### (State Claim of Violation of State Retaliation Statute)

95.

Plaintiff reiterates and reavers Paragraphs 1-94 of this Complaint.

96.

As set forth above, Wal-Mart violated Louisiana Revised Statute 23:967.

97.

As a result of Defendants' actions, Plaintiff has suffered the following damages in the following areas:

a) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

b) Back pay, benefits, reinstatement, and past, present, and future loss of earnings and fringe benefits;

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings.

## CAUSES OF ACTION
## COUNT XI
### (State Claim of Violation of State Whistleblower Act)

98.

Plaintiff reiterates and reavers Paragraphs 1-97 of this Complaint.

99.

As set forth above, Wal-Mart violated Louisiana Revised Statute 23:968.

100.

As a result of Defendant's actions, Plaintiff has suffered the following damages in the following areas:

a) Mental anguish, anxiety, humiliation, embarrassment, and inconvenience (past, present, and future);

b) Back pay, benefits, reinstatement, and past, present, and future loss of earnings and fringe benefits;

c) All other damages allowable by law, including liquidated, exemplary and punitive damages, reasonable attorneys' fees and costs of these proceedings.

101.

Plaintiff reserves the right to supplement and amend this Petition as additional discovery occurs.

102.

Plaintiff seeks all costs, reasonable attorneys' fees, interest (both pre-judgment and post-judgment as allowed by law), and expert witness fees as allowed by law be granted to Plaintiff.

103.

Plaintiff submits a in forma pauperis form not to have to pay pre-judgment costs in this action.

WHEREFORE, Plaintiff, BRIDGET GILMORE, prays that after due proceedings:

1) That Summons and Citation be issued against Defendant, Wal-Mart Louisiana, LLC;

2) That judgment be rendered in favor of Plaintiff, Bridget Gilmore, and against Defendant, WAL-MART LOUISIANA, LLC, and prays that this Court plaintiff back wages, statutory liquidated damages, and such other monetary award as may be deemed appropriate in amounts to be determined at a trial of this matter;

3) That Judgment be rendered in favor of Plaintiff, BRIDGET GILMORE, and against Defendant, WAL-MART LOUISIANA, LLC, for all costs, reasonable attorneys' fees, interest (both pre-judgment and post-judgment as allowed by law), and expert witness fees as allowed by law be granted to Plaintiff;

4) For all other just and equitable relief.

Respectfully submitted,

FINE LEGAL SERVICES, LLC

/s/ Jeremy Cedars
Jeremy Cedars (#27992)
4615 Parliament Drive, Ste. 202
Alexandria, Louisiana 71303
Telephone: (318) 767-2226
Facsimile: (888) 200-3530
Attorney for Plaintiff, Bridget Gilmore

**Please Serve:**
Wal-Mart Louisiana, LLC
through their registered agent for service of process
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816.